**DELAWARE, L. & W. R. CO. v. BOWERS, Collector of Internal Revenue.**

District Court, S. D. New York. January 22, 1926.

Douglas Swift, of New York City, for plaintiff.

Emory R. Buckner, U. S. Atty., of New York City (Morris Streusand and Earle N. Bishopp, Asst. U. S. Attys., both of New York City, of counsel), for defendant.

AUGUSTUS N. HAND, District Judge. This is an action to recover $3,408.10 taxes, plus a penalty of $170.41, which have been assessed against the plaintiff for the transmission of 37,913 messages by the Western Union Telegraph Company for the plaintiff between January 1, 1921, and August 31, 1921, pursuant to the Revenue Act of 1921 (42 Stat. 227). The messages were transmitted by the Western Union Telegraph Company, pursuant to contract between the said telegraph company and the plaintiff. The plaintiff paid the taxes and the penalty under protest.

The taxes were assessed under the Revenue Act of 1921, the pertinent sections of which are as follows:

"(a) In the case of each telegraph, telephone, cable, or radio, dispatch, message, or conversation, which originates on or after such date within the United States, and for the transmission of which the charge is more than 14 cents and not more than 50 cents, a tax of 5 cents; and if the charge is more than 50 cents, a tax of 10 cents: Provided, that only one payment of such tax shall be required, notwithstanding the lines or stations of one or more persons are used for the transmission of such dispatch, message, or conversation; and

"(b) A tax equivalent to 10 per centum of the amount paid after such date to any telegraph or telephone company for any leased wire or talking circuit special service furnished after such date. This subdivision shall not apply to the amount paid for so much of such service as is utilized (1) in the collection and dissemination of news through the public press, or (2) in the conduct, by a common carrier or telegraph or telephone company, of its business as such." Comp. St. § 6309⅓a (a), (b).

"Sec. 501. That the taxes imposed by section 500 shall be paid by the person pay-

ing for the services or facilities rendered." Comp. St. § 6309⅓b.

"Sec. 502. (a) That each person receiving any payments referred to in section 500 shall collect the amount of the tax, if any, imposed by such section from the person making such payments, and shall make monthly returns under oath, in duplicate, and pay the taxes so collected to the collector of the district in which the principal office or place of business is located." Comp. St. § 6309⅓c (a).

Article 5 of Regulation No. 57 of the Revenue Act of 1918 is adopted from the act of 1921 by reference in a later regulation.

*"Messages Transmitted under Contract.—* Where, by contract, a telegraph, telephone, radio, or cable company agrees, in consideration of the payment of a lump sum or of the performance of services, to transmit messages on frank, such messages are subject to the tax imposed by this section 500 (a) of the act. The tax on each such message is to be computed upon the amount of the regular established charge for the transmission of similar messages for ordinary customers, calculated at the regular fixed rate provided for in the tariffs of the transmitting carrier. The questions as to whether such messages relate to the operation of the business of a common carrier and whether they are 'on line' or 'off line' are immaterial. Thus, a telegraph company agrees to transmit over its lines on a railroad line all messages relating to railroad business 'free' and all such messages over its lines off the railroad lines 'free' to an amount not exceeding $10,000 per year calculated at its regular rates, and all messages over that amount at half rates, in consideration of services to be performed by the railroad in the transportation of men and materials of the telegraph company. All such messages, whether 'on line' or 'off line,' and whether 'free' or at half rates, are subject to the tax provided by this section 500 (a) of the act. The tax must be computed, collected, and paid upon each such message."

The contract between the Western Union and the plaintiff herein provided among other things the following:

"Fifth. All messages of the officers and agents of the railroad company, pertaining to its railroad business, shall be transmitted free of charge by railroad operators on the wires set apart for said business between all telegraph stations on the line of the railroads covered by this agreement, and between said stations and New York City.

"The telegraph company also agrees to issue to such officers of the railroad company as may be designated by the president or general superintendent thereof, annual franks authorizing the free transmission of messages signed by such officers and answers thereto, relating strictly to the railroad or corporate business of the railroad company's railroads covered by this agreement, originating at or destined to points on the telegraph company's lines in the United States beyond or off the line of said railroads, to an amount not exceeding in any one year twelve hundred and fifty dollars ($1,250.00) for each one million dollars ($1,000,000) of gross earnings of the railroad company (not including sale of coal, but including coal freight earnings), for such year, as, for example, if such gross earnings of the railroad company in one year equal $10,000,000, then such amount would not exceed $12,500.

"The tolls on all of such messages to or from points beyond or off the line of said railroads shall be calculated at the regular commercial day rates of the telegraph company between the points at which such messages originate and the points to which they may be destined. And the railroad company agrees to pay to the telegraph company one-half of its aforesaid rates on all such messages in excess of said amount above mentioned. Settlements under this section are to be made yearly.

"It is understood and agreed that the free telegraphic service herein provided for, not including messages sent over the wires set apart for the exclusive use of the railroad company, applies only to the transmission of messages concerning the operation and business of the railroad company's railroads covered by this agreement, and shall not be extended to any messages for transmission by cable, nor to messages containing market quotations or prices of commodities, or messages ordering sleeping car, parlor car or steamer berths, merchandise or accommodations for customers of the railroad company, the tolls on which messages shall be paid by such customers. But messages sent over wires set apart for the use of the railroad company shall not be of such a character as to compete with the business of the telegraph company, nor for persons who should pay the telegraph company's tolls on their messages."

The total amount of messages transmitted for the railroad company under article Fifth has varied from year to year, as shown by the exhibit in evidence. In only one year since the date of the contract, namely, 1913, has the amount of such messages exceeded

the maximum amount which the railroad company was entitled under the second paragraph of said article Fifth to have transmitted free; that is, without the payment of any rates, tolls, or charges of the telegraph company therefor; and for such excess messages the railroad company paid the telegraph company half rates.

Article Ninth of the contract provides for the free transportation by the railroad company of the officers and employees and of the materials and supplies of the telegraph company. It reads as follows:

"Ninth. The railroad company agrees to transport free of charge over its railroads covered by this agreement, upon application of the president, vice president, or superintendent of the telegraph company, all persons in the employ of the telegraph company when traveling on the business of said company, and also to transport and distribute free of charge, along the line of its railroads covered by this agreement, all poles, wire and other material and supplies for the construction, maintenance, operation, repair and reconstruction of the lines and wires covered by this agreement, and of such additional wires and lines of poles and wires as may be erected under the provisions of this agreement, and also all material and supplies for the establishment, maintenance and operation of the offices of each of the parties hereto at places along or adjacent to or at the termini of said railroads.

"And the railroad company further agrees to transport without charge over its railroads covered by this agreement, the poles, wire and other material and supplies of the telegraph company to be used on its lines beyond or off the line of said railroads covered by this agreement, to an amount computed at the regular current through or local transportation rates of the railroad company, as the case may be, not exceeding seven thousand dollars ($7,000) per annum during each of the first five (5) years, and not exceeding eight thousand seven hundred and fifty dollars ($8,750) per annum during each of the next fifteen (15) years, and not exceeding ten thousand five hundred dollars ($10,500) per annum during each of the next ten (10) years, of the term of this agreement, for the first one thousand (1,000) miles or less of railroad owned, leased or controlled by the railroad company and occupied by a telegraph line erected thereon and operated under the provisions of this agreement, and five dollars ($5.00) per annum additional for each additional mile of railroad constructed, owned, leased, or controlled by the railroad company and occupied as aforesaid; and the telegraph company agrees to pay to the railroad company one-half of its aforesaid rates on all such transportation of poles, wire and other material and supplies in excess of said amount. Settlements to be made yearly."

The amount of freight transported for the telegraph company under article Ninth has varied from year to year. In only two years since the date of the contract has the amount of off-line freight so transported exceeded the maximum amount to which the telegraph company was entitled under the second paragraph of said article Ninth to have transported without the payment of any rates or charges of the railroad company therefor. In those years the telegraph company paid the railroad company for the excess freight so transported one-half of the railroad company's tariff charges therefor. The parties by their contract agreed to afford one another various other rights and facilities.

■ It is clear that the franked messages are not transmitted by the telegraph company for the benefit of the railroad without compensation, but in each case are in exchange for some valuable consideration. They are not, to be sure, paid in cash. I have had no little difficulty in arriving at a valuation for the messages, but there is a charge in fact made, and the method adopted by the departmental regulation fixing the value of the service is not unreasonable. The amount ordinarily charged to the public seems a fair measure of the worth of the service.

■ The opinion of Judge Mack in regard to the precise facts of the case, though in the suit of Western Union Telegraph Co. v. Delaware, Lackawanna & Western Ry. Co. (D. C.) 282 F. 925, to recover back the taxes paid on the messages for the account of the railroad company, is of great weight and ought to be followed, unless some clear reason exists to the contrary.

Accordingly a verdict is directed for the defendant.